94 Cal.Rptr.2d 680 (2000)
79 Cal.App.4th 1088
Eva CAMARGO et al., Plaintiffs and Appellants,
v.
TJAARDA DAIRY et al., Defendants and Respondents.
No. F031741.
Court of Appeal, Fifth District.
April 14, 2000.
Review Granted July 26, 2000.
*683 Law Offices of Federico Castelan Sayre and Timothy A. Black, Newport Beach, for Plaintiffs and Appellants.
Borton, Petrini & Conron, John F. Petrini and Michael J. Stump, Bakersfield, for Defendants and Respondents.
Certified for Partial Publication.[*]

OPINION
DIBIASO, Acting P.J.
Plaintiffs and appellants Eva Camargo (and her five children) (the Camargos) filed suit against Tjaarda Dairy (the Dairy) for the wrongful death of Alberto Camargo, on various causes of action. The Camargos now appeal from the judgment entered following the order granting summary judgment in favor of the Dairy and from the later order denying the Camargos' motion for a new trial. We will reverse with directions. We hold, in the published portion of this opinion, that a cause of action for negligent hiring brought against the hirer of an independent contractor by an employee of the independent contractor survives Privette v. Superior Court (1993) 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 and Toland v. Sunland Housing Group (1998) 18 Cal.4th 253, 74 Cal.Rptr.2d 878, 955 P.2d 504.

PROCEDURAL SUMMARY
On May 15, 1997, the Camargos alleged eight causes of action against the Dairy: (1) wrongful death and negligence, (2) negligent hiring and supervision, (3) negligence per se, (4) premises liability, (5) strict product liability, (6) breach of express warranty, (7) breach of implied warranty of merchantability, and (8) breach of implied warranty of fitness. On August 7, 1997, the Dairy filed its answer.
On February 10, 1998, the Dairy moved for summary judgment. On March 16, 1998, the Camargos filed their opposition to the motion for summary judgment and, on March 23, 1998, the Dairy replied to the opposition.
On March 30, 1998, the trial court heard argument regarding the summary judgment motion. On June 12, 1998, the court invited briefing on the effect of the then newly issued opinion in Toland v. Sunland Housing Group, Inc., supra, 18 Cal.4th 253, 74 Cal.Rptr.2d 878, 955 P.2d 504. The Dairy filed additional briefing, but the Camargos did not.
On June 29, 1998, the trial court granted the Dairy's motion for summary judgment. Judgment was entered on July 17, 1998.
On July 28, 1998, the Camargos unsuccessfully moved for a new trial.
On September 15, 1998, the Camargos filed a timely notice of appeal.

FACTUAL SUMMARY
In the spring of 1996, the Dairy determined it was necessary to scrape and pile the manure in its corrals. As the Dairy was aware, such scraping and piling would require driving a tractor over mounds of manure exceeding six feet in height. The Dairy, which had itself performed the task before, decided not to do so at this time because the wet winter had left the corrals too wet and slippery. Instead, the Dairy called Golden Cal Trucking (Golden Cal), a company in the business of soil amendment which had purchased manure from *684 the Dairy in the past. The Dairy knew very little of Golden Cal, but chose to approach Golden Cal because it had paid promptly for a prior transaction in manure. Ultimately, the Dairy engaged Golden Cal to do the work, in return for either the right to purchase the manure or a discounted price on the manure.
Alberto Camargo, the decedent, was employed by Golden Cal and, on about April 29, 1996, was sent to the Dairy to begin the scraping and piling using Golden Cal's tractor. On May 17, 1996, while Alberto was driving over a manure pile, the tractor rolled and Alberto was killed.

DISCUSSION
The Camargos contend the trial court erred in granting the Dairy's motion for summary judgment because a triable issue of material fact existed regarding the negligent hiring cause of action. The Camargos argue the trial court was wrong in ruling that, pursuant to Toland v. Sunland Housing Group, Inc., supra, 18 Cal.4th 253, 74 Cal.Rptr.2d 878, 955 P.2d 504, a negligent hiring claim cannot be pursued on behalf of the employee of an independent contractor, such as Golden Cal, against the hirer of the independent contractor.

I. RELEVANT STANDARDS

A. In the Trial Court
A motion for summary judgment is an assertion by the moving party that no triable issues of fact exist and therefore that the court should terminate the action without a trial. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment bears the burden of showing the plaintiffs claims have no merit. (Ibid.) The defendant does this either by demonstrating, through the plaintiffs discovery responses, that the plaintiff will be unable to prove his or her case at trial or by negating ("disproving"), through affirmative evidence, an essential element of each of the plaintiffs causes of action. (Brantley v. Pisaro (1996) 42 Cal.App.4th 1591, 1598, 50 Cal.Rptr.2d 431.) If the defendant succeeds in meeting his or her substantive burden of proof, the burden then shifts to the plaintiff to come forward with evidence which counters the showing made by the defendant and creates a triable issue of material fact. (Ibid.) If the plaintiff fails to satisfy this burden, the trial court must enter judgment in favor of the defendant. (Ibid.)
The party bringing and the party opposing a motion for summary judgment must produce admissible evidence to support his or her case; a party cannot rely upon claims or theories unsupported by hard evidence. (Arciniega v. Bank of San Bernardino, N.A (1997) 52 Cal.App.4th 213, 231, 60 Cal.Rptr.2d 495; Rochlis v. Walt Disney Co. (1993) 19 Cal.App.4th 201, 216, 23 Cal.Rptr.2d 793 disapproved on other grounds in Turner v. Anheuser-Busch (1994) 7 Cal.4th 1238, 32 Cal. Rptr.2d 223, 876 P.2d 1022; see generally Weil & Brown, Cal. Practice Guide: Civil Procedure (The Rutter Group 1998) ¶ 10:253.1, p. 10-94.) Moreover, Code of Civil Procedure section 437c, subdivision (b), strictly requires the parties to identify all the material facts upon which they rely. Consequently, the parties must include in their respective separate statements all the facts upon which the motion or the opposition is founded; the presence of a relevant fact elsewhere in the record is not enough. As one court has put it, the "Golden Rule of Summary Adjudication" is that "if it is not set forth in the separate statement, it does not exist." (United Community Church v. Garcin (1991) 231 Cal.App.3d 327, 337, 282 Cal.Rptr. 368.) "Thus, when the `fact' is not mentioned in the separate statement, it is irrelevant that such fact might be buried in the mound of paperwork filed with the court, because the statutory purposes are not furthered by unhighlighted facts." (North Coast Business Park v. Nielsen Construction Co. (1993) 17 Cal.App.4th 22, 31, 21 Cal. Rptr.2d 104.)
*685 "`That the fact could have been found in the filed documents is of no value, because this would have imposed on the trial court the impossible burden of determining both the existence and significance of facts unmentioned by the parties. We will not place on the trial court the burden of conducting a search for facts which counsel failed to bring out, nor can we attribute a level of prescience to the trial court which counsel lacked. Instead, we adhere to the familiar rule that "possible theories not fully developed or factually presented to the trial court cannot create a `triable issue' on appeal."' [Citation.] [Citation.]" (Artiglio v. General Electric Co. (1998) 61 Cal.App.4th 830, 842, 71 Cal.Rptr.2d 817.)

B. In This Court
On appeal from a summary judgment, "we determine de novo whether an issue of material fact exists and whether the moving party was entitled to summary judgment as a matter of law. [Citation.] In other words, we must assume the role of the trial court and reassess the merits of the motion. [Citation.] In doing so, we will consider only the facts properly before the trial court at the time it ruled on the motion. [Citation.]" (Brantley v. Pisaro, supra, 42 Cal.App.4th at p. 1601, 50 Cal.Rptr.2d 431; see also Chaknova v. Wilbur-Ellis Co. (1999) 69 Cal.App.4th 962, 967, 81 Cal.Rptr.2d 871.) In this role, we do not decide the merits of the issues, but limit our review to "determining if `there is evidence requiring the fact-weighing procedures of a trial....' [Citation.]" (Pensinger v. Bowsmith, Inc. (1998) 60 Cal.App.4th 709, 717, 70 Cal.Rptr.2d 531.) Thus, we focus on issue finding; we do not resolve issues of fact. (Oliver v. County of Los Angeles (1998) 66 Cal.App.4th 1397, 1403, 78 Cal.Rptr.2d 641.) We review directly those papers submitted in connection with the motion (Hussey v. Operating Engineers Local Union No. 3 (1995) 35 Cal.App.4th 1213, 1218, 42 Cal.Rptr.2d 389), seeking "to find contradictions in the evidence, or in inferences reasonably deducible from the evidence, which raise a triable issue of material fact. [Citation.]" (Oliver v. County of Los Angeles, supra, 66 Cal.App.4th at p. 1403, 78 Cal.Rptr.2d 641.)[1]
Our assessment of a motion for summary judgment involves the same three-step analysis applicable in the trial court. "`We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond.'" (Pensinger v. Bowsmith, Inc., supra, 60 Cal.App.4th at p. 717-718, 70 Cal.Rptr.2d 531.) Second, we determine whether the moving party has met his or her burden of proof "by reliance on competent declarations, binding judicial admissions contained in the allegations of the [opposing party's pleadings], responses to discovery, and the testimony of witnesses at noticed depositions. ([Code Civ. Proc.,] § 437c, subd. (b); D'Amico v. Board of Medical Examiners (1974) 11 Cal.3d 1, 20-21, 112 Cal.Rptr. 786, 520 P.2d 10; [citations].)" (Sangster v. Paetkau (1998) 68 Cal.App.4th 151, 162, 80 Cal.Rptr.2d 66.) Third, we "`determine whether the opposition demonstrates the existence of a triable, material factual issue.'" (Saldana, v. Globe-Weis Systems Co. (1991) 233 Cal. App.3d 1505, 1513, 285 Cal.Rptr. 385.) However, we are not obliged to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any *686 judgment, it is the appellant's responsibility to discharge his or her duty to affirmatively demonstrate error and therefore to point out to this court the triable issues the appellant claims are present. (Reyes v. Kosha (1998) 65 Cal.App.4th 451, 466, fn. 6, 76 Cal.Rptr.2d 457.)
Because of the severity of the consequences of summary judgment, we carefully scrutinize the moving party's papers and resolve all doubts regarding the existence of material, triable issues of fact in favor of the party opposing the motion. (Pensinger v. Bowsmith, Inc., supra, 60 Cal.App.4th at p. 717, 70 Cal.Rptr.2d 531.) "`"[T]he moving party's affidavits are strictly construed while those of the opposing party are liberally construed." ... We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence.... In other words, the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences therefrom must be accepted as true.' [Citation.]" (Cheyanna M. v. A.C. Nielsen Co. (1998) 66 Cal. App.4th 855, 861, 78 Cal.Rptr.2d 335.) Like the trial court, we must consider all the evidence properly identified in the papers submitted, except that to which objections have been made and sustained by the court. (Code Civ. Proc., § 437c, subd. (c); Barber v. Marina Sailing, Inc. (1995) 36 Cal.App.4th 558, 561, fn. 2, 42 Cal.Rptr.2d 697.) If the trial court does not rule upon objections to evidence advanced by a party, the objections are waived and the appellate court may consider "as the trial court presumably did, all of the evidence set forth in the papers." (Barber v. Marina Sailing, Inc., supra, 36 Cal.App.4th at p. 561, fn. 2, 42 Cal.Rptr.2d 697.) Where a party fails to timely object in the trial court to the admissibility of evidence, the objection is also waived. (Code Civ. Proc., § 437c, subd. (d); Hagen v. Hickenbottom (1995) 41 Cal.App.4th 168, 175, 48 Cal. Rptr.2d 197.)

II. MERITS

A. Introduction
The Camargos challenge the trial court's granting of summary judgment only as to the second cause of action for negligent hiring, which alleged that the Dairy breached its "duty to investigate the background and experience of employees [of Golden Cal] to insure that these employees understood the importance of and were qualified in operating the TRACTOR and providing safety equipment to protect workers ... from being crushed to death by the TRACTOR."
As defendant and moving party, the Dairy bore the burden of showing that a necessary element of the negligent hiring cause of action could not be established or that there existed a complete defense to it. (Brantley v. Pisaro, supra, 42 Cal.App.4th at p. 1598, 50 Cal.Rptr.2d 431.) To this end, the Dairy's motion asserted that summary disposition of this cause of action was required because Privette v. Superior Court, supra, 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 limited the Camargos' recovery to the exclusive remedy of workers' compensation and precluded the Camargos' recovery against the Dairy for injuries caused by Golden Cal's negligence. In supplemental briefing to which the Camargos did not respond, the Dairy further argued that Toland v. Sunland Housing Group, Inc., supra, 18 Cal.4th 253, 74 Cal. Rptr.2d 878, 955 P.2d 504 also supported a summary judgment in the Dairy's favor and "eliminate[d] any ambiguity" or "confusion" about the Dairy's liability after Privette. The trial court granted summary judgment in favor of the Dairy, stating "GENERAL NEGLIGENCE AND NEGLIGENT HIRING THEORIES OF LIABILITY DO NOT APPLY TO GOLDEN CAL EMPLOYEES. (TOLAND VS SUNLAND [supra, 18 Cal.4th 253, 74 Cal. Rptr.2d 878, 955 P.2d 504])."
Under the common law, a person who hired an independent contractor was generally immunized from liability for a *687 third party's injuries caused by the torts of the independent contractor. The rule, however, has become subject to so many exceptions that "`"`[it] is now primarily important as a preamble to the catalog of its exceptions.'"' [Citations.]" (Privette v. Superior Court, supra, 5 Cal.4th at p. 693, 21 Cal.Rptr.2d 72, 854 P.2d 721; see also Sugimoto v. Exportadora De Sal (9th Cir.1994) 19 F.3d 1309, 1312 [nonliability is the rule "only in the sense that it is applied when no good reason is found for departing from it"].) Two of the many acknowledged exceptions to the nonliability rule have been the doctrine of peculiar risk and the theory of negligent hiring. Until recently, both of these exceptions allowed the independent contractor's own employee to bring suit against the person who hired the independent contractor. However, in Privette v. Superior Court, supra, 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 and Toland v. Sunland Housing Group, Inc., supra, 18 Cal.4th 253, 74 Cal.Rptr.2d 878, 955 P.2d 504, the Supreme Court explicitly abrogated the doctrine of peculiar risk to the extent it applied to the independent contractor's own employee, leaving workers' compensation as that employee's exclusive remedy for the independent contractor's negligence.
The parties now disagree whether Privette and Toland also extinguished the negligent hiring exception to the general rule of nonliability. The Camargos contend these two opinions did not reach negligent hiring and thus the trial court should not have summarily disposed of the Camargos' claim the Dairy was negligent in hiring the allegedly incompetent independent contractor, Golden Cal. The Camargos argue that their cause of action for negligent hiring is based upon a theory of direct liability the Dairy's own negligence (Rest.2d. Torts, § 411)[2] and not upon a theory of vicarious liability such as peculiar risk (§§ 416, 413). The Dairy, on the other hand, maintains that Privette and Toland have effectively foreclosed actions for negligence, whatever the theory, against the hirer of an independent contractor and have limited the employee's recovery to the benefits payable under the workers' compensation scheme. We agree with the Camargos, for the reasons explained below, that their cause of action for negligent hiring survived Privette and Toland.

B. Peculiar Risk: The Privette-To-land Rule
"Under the doctrine of peculiar risk, a person who hires an independent contractor to do inherently dangerous work can be held liable for tort damages when the contractor causes injury to others by negligently performing the work. The doctrine serves to ensure that innocent bystanders or neighboring landowners injured by the hired contractor's negligence will have a source of compensation even if the contractor turns out to be insolvent." (Toland, supra, 18 Cal.4th at p. 256, 74 Cal.Rptr.2d 878, 955 P.2d 504.) Although the doctrine of peculiar risk was at one time applied to the benefit of the independent contractor's own employees (see Woolen v. Aerojet General Corp. (1962) 57 Cal.2d 407, 20 Cal.Rptr. 12, 369 P.2d 708 and its progeny), in Privette the Supreme Court reversed this line of authority, reasoning that the doctrine should not extend to the contractor's employees because they receive payment for their injuries through workers' compensation. The court therefore held that an employee who is harmed by the negligence of the independent contractor cannot sue the nonnegligent hirer of the independent contractor.
In Toland v. Sunland Housing Group, Inc., supra, 18 Cal.4th 253, 74 Cal. Rptr.2d 878, 955 P.2d 504, the Supreme Court "clarified" Privette (Toland, at p. *688 264, 74 Cal.Rptr.2d 878, 955 P.2d 504) by explaining that Privette bars suits by an employee of an independent contractor against the hirer of the independent contractor "irrespective of whether recovery is sought under the theory of peculiar risk set forth in section 416 or section 413...."[3] (Toland, at p. 267, 74 Cal.Rptr.2d 878, 955 P.2d 504.) The court believed that "[i]n either situation, it would be unfair to impose liability on the hiring person when the liability of the contractor, the one primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage." (Ibid.) The court also thought it "illogical and unfair that a landowner or other person who hires an independent contractor should have greater liability for the independent contractor's negligence towards the contractor's employees than the independent contractor whose liability is limited to providing workers' compensation coverage." (Id. at p. 270, 74 Cal.Rptr.2d 878, 955 P.2d 504.) The Privette-Toland rule, therefore, insulates the hirer of an independent contractor from all forms of vicarious liability to the contractor's employees for injuries caused by the contractor's negligence.

C. Negligent Hiring
Under the negligent hiring exception to the general rule of nonliability, a hirer "who negligently fails to employ a competent and careful contractor may be liable for injuries caused by the contractor's failure to exercise due care. [Citations.]" (Chevron v. Superior Court (1992) 4 Cal.App.4th 544, 549, 5 Cal.Rptr.2d 674; Grahn v. Tosco Corp. (1997) 58 Cal. App.4th 1373, 1390, 68 Cal.Rptr.2d 806; Golden v. Conway (1976) 55 Cal.App.3d 948, 956-957, 128 Cal.Rptr. 69; Risley v. Lenwell (1954) 129 Cal.App.2d 608, 622-625, 277 P.2d 897; Holman v. State of California (1975) 53 Cal.App.3d 317, 336, 124 Cal.Rptr. 773; see also Rest.2d Torts, §411; Wilson v. Good Humor Corp. (D.C.Cir.1985) 757 F.2d 1293, 1309; SeaRiver Maritime, Inc. v. Industrial Medical Services, Inc. (N.D.Cal.1997) 983 F.Supp. 1287, 1296.) Thus, "`quite apart from any question of vicarious responsibility, the [hirer] may be liable for any negligence of his own in connection with the work to be done. Where there is a foreseeable risk of harm to others unless precautions are taken, it is his duty to exercise reasonable care to select a competent contractor .... In [this] case[ ], he is liable for his personal negligence, rather than that of the contractor.' "(Risley v. Lenwell, supra, 129 Cal.App.2d at p. 622, 277 P.2d 897.) The hirer's duty to select a competent and careful independent contractor has been held to extend to the employees of the negligently hired independent contractor, permitting them to sue the hirer for on-the-job injuries caused by the independent contractor's lack of due care. (Grahn v. Tosco Corp., supra, 58 Cal.App.4th at p. 1390, 68 Cal.Rptr.2d 806; Chevron v. Superior Court, supra, 4 Cal.App.4th at p. *689 549, 5 Cal.Rptr.2d 674; Gettemy v. Star House Movers (1964) 225 Cal.App.2d 636, 643-644, 37 Cal.Rptr. 441; Holman v. State of California, supra, 53 Cal.App.3d at p. 336,124 Cal.Rptr. 773.)
Although there is a paucity of guidance and a wealth of controversy surrounding the question, our reading of Privette and Toland, along with Grahn v. Tosco Corp., supra, 58 Cal.App.4th 1373, 68 Cal.Rptr.2d 806, leads us to conclude that these principles remain viable.

1. The Effect of Privette

By the time Toland was decided in 1998, the effect and scope of Privette had become a contentious topic. Appellate courts struggled to decipher whether the reasoning and policy premise of Privette mandated so broad a sweep that an independent contractor's employee was left with no cause of action whatsoever against the person who hired the contractor.[4] Many courts concluded, either explicitly or implicitly, that Privette was inapplicable to direct liability theories. For example, in Smith v. ACandS, Inc. (1994) 31 Cal. App.4th 77, 37 Cal.Rptr.2d 457, the court, relying upon Privette, reversed to the extent the judgment was based on peculiar risk vicarious liability but found sufficient evidence the hirer "breached its duty to exercise ordinary care in the management of its premises by failing to hire careful and competent [independent contractors].... The matter was for the jury, and properly submitted to them." (Smith, at p. 97, 37 Cal.Rptr.2d 457.) In Whitford v. Swinerton & Walberg Co. (1995) 34 Cal. App.4th 1054, 40 Cal.Rptr.2d 688, the jury found the independent contractor's employer vicariously liable on a peculiar risk theory and also independently negligent for its own conduct. On appeal, the court agreed that Privette retroactively applied to doom the plaintiffs peculiar risk cause of action, but upheld the judgment based upon the employer's own independent negligence without even a nod to Privette. The federal circuit court in Yanez v. United States (9th Cir.1995) 63 F.3d 870 also relied on Privette to affirm the district court's rejection of the employee's peculiar risk claim, but reversed the judgment on the retention of control cause of action under section 414. Similarly, in Lopez v. University Partners (1997) 54 Cal.App.4th 1117, 63 Cal.Rptr.2d 359, the court discussed the applicability of Privette to the peculiar risk cause of action (Lopez, at pp. 1122-1125, 63 Cal.Rptr.2d 359), but, as in Yanez, did not mention Privette when considering section 414's retention of control theory.[5] (Lopez, at pp. 1125-1126, 63 Cal. Rptr.2d 359).
Not long after Lopez, and while Toland was pending review before the Supreme Court, Grahn v. Tosco Corp., supra, 58 Cal.App.4th 1373, 68 Cal.Rptr.2d 806, upon which the Camargos rest their appeal, was decided; it dealt directly with negligent hiring. The Grahn court explicitly held that Privette did not bar suit by an employee of the independent contractor against the contractor's hirer where the hirer was itself alleged to have been independently negligent in engaging an incompetent independent contractor. The court stated:
"Negligent hiring is a theory of personal rather than vicarious liability. The negligence of the contractor, in and of itself, is insufficient to impose liability on the hirer under section 411 of the Restatement. Instead, liability is imposed under ordinary negligence principles for hiring an independent contractor the hirer knows or should know is incompetent to do the work and where the contractor's incompetence results in injury to others. Therefore, while the *690 hirer is subject to liability for injury immediately caused by the independent contractor's deficiencies, the hirer's culpability is based on its own negligence in entrusting the work to the independent contractor ab initio. [Citation.]" (Grahn v. Tosco Corp., supra, 58 Cal. App.4th at p. 1391, 68 Cal.Rptr.2d 806.)[6]
The court explained that, "while in most cases the workers' compensation system is the employee's exclusive remedy against the [hirer], it was never designed to constitute the employee's exclusive remedy against the universe. ... In Privette itself, the court recognized that the exclusivity clause, `does not preclude the employee from suing anyone else whose conduct was a proximate cause of the injury. [Citations.]' [Citation.]" (Grahn v. Tosco Corp., supra, 58 Cal.App.4th at p. 1386, 68 Cal.Rptr.2d 806.) The court held that "Privette's concern about the fundamental unfairness of imposing vicarious liability on a nonnegligent hirer is entirely inapplicable where the hirer's own negligent conduct has caused or contributed to the worker's injury." (Grahn, at pp. 1384-1385, 68 Cal.Rptr.2d 806.) Refusing to "interpret[ ] Privette as establishing a rule by which hirers are entirely free from the financial consequences of their own negligent conduct vis-à-vis independent contractor employees," a concept the court believed would "analytically collide[ ] with long-standing common law and statutory doctrines," Grahn found a "`safe harbor' in adhering to the salutary principle of judicial restraint in leaving such a major change in substantive tort law to our Supreme Court." (Id. at pp. 1388-1389, 68 Cal.Rptr.2d 806.) Grahn rejected the proposition that it had "an obligation to extend the Supreme Court's reasoning to situations where the hirer's liability is based on fault rather than status" and "join[ed its] colleagues who, after Privette was pronounced, [had] continued to recognize the potential liability of a hirer for its own negligence resulting in injuries to an independent contractor's employee. [Citations.]" The Grahn court summarized: "We therefore conclude Privette is limited to cases of peculiar risk seeking to impose liability on hirers of independent contractors vicariously under the rubric of a non-delegable duty. It does not impair the right of an injured employee to sue the hirer for causes of action not based on principles of vicarious liability." (Grahn, at p. 1389, 68 Cal.Rptr.2d 806.)

2. The Effect of Toland

Seven months after Grahn, the Supreme Court decided Toland without mentioning Grahn.[7] Like that of Privette, the scope of Toland is debatable, as is its attempted "clarification" of Privette. Toland expanded Privette in the sense that it criticized the "misleading" distinction between the two peculiar risk theories of the Restatement Second of Torts the "vicarious" liability of section 416 (addressed by Privette) and the "direct" liability of section 413. (Toland v. Sunland Housing Group, Inc., supra, 18 Cal.4th at p. 264, 74 Cal. Rptr.2d 878, 955 P.2d 504.) The court explained:
"[U]nder either section 413 or section 416, the hiring person is subject to liability for injuries to others resulting from the contractor's failure to take safety precautions while performing the inherently dangerous work. [¶] ... [U]nder both sections 413 and 416, the hiring person's liability is cast in the form of the hiring person's breach of duty to see *691 to it that special precautions are taken to prevent injuries to others; in that sense, the liability is `direct.' Yet, peculiar risk liability is not a traditional theory of direct liability for the risks created by one's own conduct: Liability under both sections is in essence `vicarious' or 'derivative' in the sense that it derives from the `act or omission' of the hired contractor, because it is the hired contractor who has caused the injury by failing to use reasonable care in performing the work." (Toland, at pp. 264-265, 74 Cal.Rptr.2d 878, 955 P.2d 504.)
The court repeated its statement in Privette: "`The conclusion that peculiar risk is a form of vicarious liability is unaffected by the characterization of the doctrine as 'direct' liability in situations when the person hiring an independent contractor `fails to provide in the contract that the contractor shall take [special] precautions.'" (Toland, supra, 18 Cal.4th at p. 265, 74 Cal. Rptr.2d 878, 955 P.2d 504, fn. omitted.)
However, in a remark of relevance to us, the court also said:
"By concocting a duty in a particular situation to prevent another from acting negligently, as an exception to the general rule ..., it is always possible to impose liability on one person for the negligence of another and to label that liability `direct.' ... [There is a] distinction between this artificial `direct liability' and the liability imposed on the hiring person for injuries resulting from the hiring person's own conduct, such as, for example, concealing a hidden danger ... or insisting on use of an unsafe method to execute the work." (Toland, supra, 18 Cal.4th at p. 265, fn. 3, 74 Cal.Rptr.2d 878, 955 P.2d 504, italics added.)[8]
The single relevant case we have found published after Toland is Zamudio v. City and County of San Francisco (1999) 70 Cal.App.4th 445, 82 Cal.Rptr.2d 664. Cited by the Dairy as critical of Grahn's pre-Toland reasoning, Zamudio is in reality unhelpful to the Dairy's case. The employee in Zamudio worked for a subcontractor who was hired by a city and its prime contractor (the hirers). The employee sued the hirers on a variety of direct and vicarious liability theories, including the hirers' retention of control (§ 414) over the subcontractor's work. The hirers' motion for summary judgment was granted by the trial court.
The appellate court affirmed. Addressing the employee's vicarious liability claims, the court stated:
"Appellant is mistaken in his reliance upon Grahn. It is important to recognize that Grahn preceded the Supreme Court ruling in Toland, a ruling which reaffirmed and extended Privette. In the body of its decision, the court in Grahn mentioned that the Supreme Court had granted review in Toland [citation]; but it could not, and did not, anticipate Toland's sweeping holding which barred the assertion of vicarious liability in tort against the hirers of a subcontractor for injuries to the subcontractor's own employees. Because Grahn did not have the benefit of this most recent holding, its reasoning cannot be relied upon to support appellant's argument. Further, it must be recognized that even Grahn would not allow tort liability to be imposed against an owner of the construction project or its *692 manager which did not control the work in question or directly cause the injury which is the case here. [Citation.]" (Zamudio v. City and County of San Francisco, supra, 70 Cal.App.4th at p. 451, 82 Cal.Rptr.2d 664.)
The Zamudio court did not assess whether the employee's direct liability claims, including constructive knowledge of a dangerous practice and failure to prevent the subcontractor's negligent performance, had been preempted by Privette and Toland. Rather, the court assumed without deciding that the employee's "characterization between `vicarious' and `direct' liability [was] an accurate statement ]" and found that the employee's papers in opposition to the motion did not disclose sufficient admissible evidence to raise a triable issue of fact about the employee's right to recover under any direct liability theory. Zamudio thus is not authority for the proposition that the Camargos' cause of action for negligent hiring was abrogated by Privette and Toland.[9]

3. Conclusion
For the reasons stated above and those expressed in Grahn (58 Cal.App.4th at pp. 1389-1392, 68 Cal.Rptr.2d 806), we will not hold that Privette eliminated negligent hiring as a viable independent ground of liability for plaintiffs such as the Camargos. Nor can we say that Toland unambiguously enlarged Privette to encompass negligent hiring. Toland, like Privette, expressly dealt with "vicarious," or at least "derivative," liability imputed to a non-negligent hirer for the negligence of an independent contractor. The claimed liability here is not vicarious; it is direct, arising from the hirer's alleged personal and independent failure to use care in choosing the independent contractor. (See § 411, Comment b [Hirer is legally responsible "for any harm caused by the contractor's lack of skill, experience, or equipment, but not for any harm caused solely by the contractor's inattention or negligence." (Italics added) ].) We therefore conclude that negligent hiring as an independent cause of action survives Privette and Toland. In doing so, we join company with Grahn, preferring to wait for clear direction from the Supreme Court rather than to interpret ambiguous language, uttered in a different context, as heralding a watershed in California law.

D. The Camargos' Case[**]

DISPOSITION
The judgment is reversed and the matter is remanded to the trial court with directions to vacate its order granting summary judgment in favor of the Dairy and to make and enter a different order denying summary adjudication of the Camargos' cause of action for negligent hiring and granting summary adjudication in favor of the Dairy as to all other causes of action of the Camargos' complaint. The Camargos' appeal from the trial court's order denying the Camargos' motion for new trial is dismissed as moot. The Camargos are awarded costs on appeal.
BUCKLEY, J., and WISEMAN, J., concur.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Part II.D.
[1] The opinion in Oliver v. County of Los Angeles, supra, 66 Cal.App.4th at page 1403, 78 Cal.Rptr.2d 641, includes language to the effect that the appellate court may affirm on a theory not raised by the moving party in the trial court and first addressed on appeal. We do not adopt this aspect of Oliver because it would appear to permit affirmance of a judgment against the opposing party based upon a ground as to which the opposing party was given no notice or opportunity to respond. (Compare Juge v. County of Sacramento (1993) 12 Cal.App.4th 59, 69-71, 15 Cal. Rptr.2d 598; see also Western Mutual Ins. Co. v. Yamamoto (1994) 29 Cal.App.4th 1474, 1481, 35 Cal.Rptr.2d 698.)
[2] All subsequent references to "sections" refer to the Restatement Second of Torts unless otherwise noted.
[3] Section 416 appears under the topic "Harm Caused by Negligence of a Carefully Selected Independent Contractor" and is entitled "Work Dangerous in Absence of Special Precautions." It reads: "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

Section 413, found under the topic "Harm Caused by Fault of Employers of Independent Contractors," is entitled "Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor." It provides: "One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer [¶](a) fails to provide in the contract that the contractor shall take such precautions, or [¶](b) fails to exercise reasonable care to provide in some other manner for the taking of precautions."
[4] The controversy has arisen most often in connection with the theory of retention of control. (§ 414.)
[5] In Yanez's concurring and dissenting opinion, Judge Noonan argued the reasoning of Privette extended to theories of direct liability such as retention of control. (Yanez v. United States, supra, 63 F.3d at pp. 875-877.)
[6] Section 411 is found under the topic "Harm Caused by Fault of Employers of Independent Contractors" and is entitled "Negligence in Selection of Contractor." It states: "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor [¶](a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or [¶](b) to perform any duty which the employer owes to third persons."
[7] The majority never cited Grahn, although the concurring and dissenting opinion did so repeatedly.
[8] Toland also left open another direct liability cause of action deceit. The court noted: "Our decision in no way precludes employees of independent contractors from seeking recovery from a general contractor or other hiring person for personal injury resulting from a failure to disclose a concealed preexisting danger at the site of the hired work that was known to the hiring person. Recovery in such a case would be for fraudulent concealment or misrepresentation, however, and would not involve the `comparative knowledge' analysis proposed by the concurring and dissenting opinion, nor would it depend on the peculiar risk doctrine." (18 Cal.4th at p. 269, fn. 4, 74 Cal.Rptr.2d 878, 955 P.2d 504.)
[9] To the extent Zamudio may be read to disapprove the reasoning of Grahn regarding the theory of negligent hiring, we respectfully disagree.
[**] See footnote *, ante.